United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 16-CR-00334-LHK |
| Plaintiff, | **ORDER DENYING DEFENDANT JENNIFER YANG'S MOTIONS IN LIMINE** |
| v. | |
| JENNIFER YANG AND DANIEL WU, | Re: Dkt. Nos. 167, 168, 171 |
| Defendants. | |

On October 12, 2017, a federal grand jury returned a Superseding Indictment charging Defendants Jennifer Yang and Daniel Wu with one count of conspiracy ("Count 1"), three counts of visa fraud ("Counts 2 through 4"), two counts of mail fraud ("Counts 5 and 6"), and two counts of aggravated identity theft ("Counts 7 and 8"). ECF No. 4 ("Superseding Indictment"). The Superseding Indictment also charges Defendant Jennifer Yang with two counts of money laundering ("Counts 9 and 10"). *Id.* Trial in this case is scheduled to begin on November 12, 2019. A pre-trial conference will take place on October 30, 2019.

On October 15, 2019, in advance of the pre-trial conference, Defendant Yang filed four motions in limine: (1) Motion in Limine No. 1 to Exclude Certain Documents Located in the Bates Ranges Provided for Government Exhibits One Through Nine, ECF No. 167, which Defendant

1

Case No. 16-CR-00334-LHK
ORDER DENYING DEFENDANT JENNIFER YANG'S MOTIONS IN LIMINE

1   Wu joins, ECF No. 177; (2) Motion in Limine No. 2 Re: Christine Sarapu, ECF No. 168, which

2   Defendant Wu joins, ECF No. 177; (3) Motion in Limine No. 3 to Exclude Government 404(b)

3   Evidence, ECF No. 170; and (4) Motion in Limine No. 4 to Exclude Evidence Regarding Ms.

4   Yang's Personal Expenses and Bank Accounts, ECF No. 171.  The Government filed oppositions

5   on October 22, 2019.  ECF Nos. 190, 191, 193.  The Court resolved Defendant Yang's Motion in

6   Limine No. 3 in its October 25, 2019 order.  ECF No. 200.  Defendant Yang's three remaining

7   motions in limine are now before the Court.  Having considered the parties' submissions, the

8   relevant law, and the record in this case, the Court DENIES all three remaining motions in limine.

9   **I.      LEGAL STANDARD**

10      Motions in limine are a "procedural mechanism to limit in advance testimony or evidence

11  in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  Like other

12  pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise

13  clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

14  Accordingly, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely

15  within the discretion of the district court." *Id.*; *see Luce v. United States*, 469 U.S. 38, 41 n. 4

16  (1984) (explaining that a court may rule in limine "pursuant to the district court's inherent

17  authority to manage the course of trials").

18      In many instances, however, rulings "should be deferred until trial, so that questions of

19  foundation, relevancy, and potential prejudice may be resolved in proper context." *United States*

20  *v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016).  For example, in order to

21  exclude evidence on a motion in limine, "the evidence must be inadmissible on all potential

22  grounds." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014).

23  Thus, denial of a motion in limine to exclude certain evidence does not mean that all evidence

24  contemplated by the motion will be admitted, only that the court is unable to make a

25  comprehensive ruling in advance of trial. *Id.*  Moreover, even if a district court does rule in

26  limine, the court may "change its ruling at trial because testimony may bring facts to the district

27  court's attention that it did not anticipate at the time of its initial ruling." *City of Pomona*, 866

28

2

Case No. 16-CR-00334-LHK
ORDER DENYING DEFENDANT JENNIFER YANG'S MOTIONS IN LIMINE

1    F.3d at 1070; *see also Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings

2    are not binding on the trial judge, and the judge may always change his mind during the course of

3    a trial.").

4    **II.    DEFENDANT YANG'S MOTIONS IN LIMINE**

5    **A. Motion in Limine No. 1 to Exclude Certain Documents Located in the Bates Ranges
     Provided for Government Exhibits One Through Nine**

6        In Motion in Limine No. 1, Defendant Yang asks the Court to exclude various immigration

7    filings identified in the Government's Exhibit List that she believes are not relevant to the charged

8    conduct. ECF No. 167 ("Yang Mot. No. 1") at 2. As part of the charged scheme to defraud,

9    Defendant Yang is accused of having "submit[ted] and cause[d] to be submitted I-526 and I-829

10   petitions . . . containing false representations and material omissions." Superseding Indictment at

11   ¶ 23. As relevant here, the Superseding Indictment identifies three specific I-526 or I-829 forms

12   that form the basis of the charges: WZ's I-526 petition, identified as Government Exhibit 1; YZ's

13   I-829 petition, identified as Government Exhibit 7; and SY's I-829 petition, identified as

14   Government Exhibit 8. *Id.* ¶¶ 36, 38, 40; ECF No. 156; *see also* Yang Mot. No. 1 at 2. Defendant

15   Yang objects that these exhibits, though they purport to contain only the aforementioned petitions,

16   actually "include multiple unrelated immigration petitions or filings (the 'Unrelated Filings') that

17   are distinct from the I-526 and I-829 petitions at issue." Yang Mot. No. 1 at 2. Defendant Yang

18   therefore moves to exclude those "unrelated filings" as irrelevant under Federal Rule of Evidence

19   401 or likely to confuse the jury and cause undue prejudice under Federal Rule of Evidence 403.

20   *Id.* at 3.

21       The Government responds that its exhibits do not contain any "unrelated filings." Rather,

22   the exhibits at issue simply reflect the way that U.S. Citizenship and Immigration Services

23   ("USCIS") organizes and evaluates EB-5 visa applications. ECF No. 191 at 3. According to the

24   Government, USCIS considers submissions other than the applicant's I-526 or I-829 forms, and its

25   records of each application include the supporting submissions. *Id.* As a result, the Government's

26   exhibits contain documents other than the applicant's I-526 or I-829 form because "those

27

28
3

1    documents . . . constituted part of the overall applications that USCIS reviewed in adjudicating

2    those petitions." *Id.* The Government has not itself "shuffle[d] or rearrange[d]" the files it

3    received from USCIS. *Id.* It is undisputed that WZ's visa application, YZ's visa application, and

4    SY's visa application are relevant to the instant case, as they provide the factual predicate for

5    various charges in the Superseding Indictment. As the Government represents that its exhibits

6    contain only those filings that comprised each individual visa application, the objected-to

7    documents are relevant as well.

8         Furthermore, the Government contends that forms that require the preparer—when that is

9    someone other than the petitioner—to identify himself or herself are evidence of Defendants'

10   control over the foreign investors' visa application processes. *Id.* at 4. Similarly, the Government

11   asserts that forms that record contact information used by USCIS to provide status updates on

12   pending petitions are evidence of Defendants' control over information from USCIS to the foreign

13   investors. *Id.* The Government also argues that USCIS's requests for evidence and responses to

14   such requests are evidence of the deficiencies in the petitions, as well as Defendants' alleged

15   attempts to bolster false representations in the original submissions. *Id.* These proposed uses of

16   immigration forms other than the applicant's I-526 or I-829 form are entirely appropriate.

17        Accordingly, Defendant Yang's motion is DENIED. Defendants may object on Rule 403

18   grounds when the Government seeks to introduce specific documents at trial.

19   **B. Motion in Limine No. 2 Re: Christine Sarapu**

20        In Motion in Limine No. 2, Defendants ask the Court to exclude portions of Government

21   expert Christine Sarapu's report and to preclude Ms. Sarapu from testifying to the same. ECF No.

22   168 ("Yang Mot. No. 2"). Specifically, Defendants contend that Ms. Sarapu proposes to offer

23   testimony "defining the applicable law and drawing legal conclusions as to what constitutes

24   compliance with, or violations of, the law, in the following numbered paragraphs[:] 19, 23-29, 31-

25   42, 45-50, 52-82, 84-86, and 100." *Id.* at 5. Defendants believe such testimony is not permitted

26   by Federal Rule of Evidence 702 and may also run afoul of Federal Rule of Evidence 403.

27        Rule 702 permits expert witnesses to provide opinion testimony if "the expert's scientific,

28
Case No. 16-CR-00334-LHK
ORDER DENYING DEFENDANT JENNIFER YANG'S MOTIONS IN LIMINE

United States District Court
Northern District of California

1    technical, or other specialized knowledge will help the trier of fact to understand the evidence or

2    to determine a fact in issue." Fed. R. Evid. 702. As Defendants emphasize, however, "an expert

3    witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of

4    law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)

5    (internal quotation marks omitted). This prohibition recognizes that, "when an expert undertakes

6    to tell the jury what result to reach, this does not aid the jury in making a decision, but rather

7    attempts to substitute the expert's judgment for the jury's." *United States v. Diaz*, 876 F.3d 1194,

8    1197 (9th Cir. 2017) (internal quotation marks and alterations omitted). It is also improper for an

9    expert witness to give "legal explanations and conclusions" or otherwise "instruct the jury as to

10   the applicable law," which is "the distinct and exclusive province of the court." *Nationwide*

11   *Transp. Fin.*, 523 F.3d at 1058.

12          "It is well-established, however, that expert testimony concerning an ultimate issue is not

13   per se improper." *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1066 (9th

14   Cir. 2002), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457

15   (9th Cir. 2014). Although the jury must decide any "ultimate issue of law," an expert witness may

16   "aid the jury in understanding the facts in evidence even though reference to those facts is couched

17   in legal terms." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir.

18   2004). That is, an expert's testimony "may refer to the law in expressing an opinion without that

19   reference rendering the testimony inadmissible." *Id.* at 1017. In *Hangarter*, for instance, the

20   Ninth Circuit held that expert witness Frank Caliri did not reach inappropriate legal conclusions

21   on the ultimate legal issue of bad faith. *Id.* at 1016. As the Ninth Circuit explained, "[w]hile

22   Caliri's testimony that Defendants deviated from industry standards supported a finding that they

23   acted in bad faith, Caliri never testified that he had reached a legal conclusion that Defendants

24   actually acted in bad faith." *Id.* Caliri also did not "instruct the jury as to the applicable law"

25   simply because his testimony "that Defendants departed from insurance industry norms relied in

26   part on his understanding of the requirements of state law." *Id.* at 1017. Those state law

27   requirements were not directly at issue in the case and so "were ancillary to the ultimate issue of

28
5
Case No. 16-CR-00334-LHK
ORDER DENYING DEFENDANT JENNIFER YANG'S MOTIONS IN LIMINE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

bad faith." *Id.*

Here, the Government intends to use Ms. Sarapu to show the materiality of Defendants'
alleged falsehoods, which is an element of the federal visa fraud statute, *see United States v.
Matsumaru*, 244 F.3d 1092, 1101 (9th Cir. 2001). ECF No. 193 at 4. A statement in a visa
petition is material if it "could have affected or influenced the government's decision to grant
those petitions." *Id.* To persuade the jury that Defendants' alleged misstatements were material,
the Government proposes to have Ms. Sarapu "explain[] how USCIS evaluates the relevant visa
applications and what information the agency relies upon in reaching its decision to grant or deny
a given visa." ECF No. 193 at 1. Ms. Sarapu is apparently a Supervisory Adjudications Officer at
USCIS with "extensive experience as an adjudications officer reviewing the visa petition forms at
issue" and as a supervisor overseeing such adjudications officers. *Id.* at 3. Defendants do not
contest Ms. Sarapu's qualifications in this regard.

The Court holds that, as a general matter, the Government may elicit testimony from Ms.
Sarapu as to "the steps involved in applying for and obtaining an EB-5 visa" and "USCIS's
approach to adjudicating EB-6 visa petitions." *Id.* at 4. The Ninth Circuit approved of similar
testimony in *United States v. Matsumaru*, which also concerned visa fraud. There, the prosecution
called to the witness stand an adjudication officer for the Immigration and Naturalization Service
and a State Department official, both of whom had reviewed many E–2 treaty investor petitions—
the type of petition at issue in the case. 244 F.3d 1092, 1101 (9th Cir. 2001). To satisfy the
prosecution's burden of proving materiality, those witnesses testified to whether and why
"knowing certain facts could have affected or influenced their decision to approve the particular
visa petition." *Id.* at 1101-02. The Government purports to use Ms. Sarapu for the same purpose
in the instant case, and the Court sees no problem with that plan. The ultimate legal issue that the
jury must decide is whether Defendants' alleged misstatements were material—not whether
Defendants satisfied the legal requirements for an EB-5 visa. Thus, as in *Hangarter*, the legal
requirements for an EB-5 visa are "ancillary" to the ultimate legal issue, though they may inform
Ms. Sarapu's testimony as to what factors USCIS considers in adjudicating EB-5 petitions. As a

6

1   result, Ms. Sarapu's testimony does not usurp either the jury's factfinding role or the judge's role

2   in instructing the jury.

3          The "more obvious examples of . . . inadmissible expert testimony" offered by Defendants

4   illustrate this distinction. Yang Mot. No. 2 at 5. For instance, Defendants take issue with Ms.

5   Sarapu's statement that "a Form-I-526 must be filed in *good faith* and with full intention to follow

6   the plan outlined in the petition. If the alien investor does not demonstrate that he or she filed the

7   Form I-526 in good faith, USCIS may conclude that the investment in the commercial enterprise

8   was made as a means of evading the immigration laws." *Id.* at 5. Defendants believe the "good

9   faith" requirement—which does not appear in the relevant statutes or regulations—is Ms. Sarapu's

10  gloss on the statutory command that if "the investment in the commercial enterprise was intended

11  solely as a means of evading the immigration laws of the United States," the Attorney General

12  "shall terminate the permanent resident status of the alien." 8 U.S.C. § 1186b(b)(1)(A). But Ms.

13  Sarapu's report makes clear that she is not offering her own interpretation of the statutory

14  requirements for an EB-5 visa—she is describing how USCIS interprets those requirements. How

15  USCIS interprets the statutory requirements for an EB-5 visa is integral to understanding how

16  USCIS evaluates EB-5 applications. It would be impossible for Ms. Sarapu to explain what

17  factors USCIS considers in evaluating EB-5 applications without referencing the statutes and

18  regulations from which those factors presumably derive. Ms. Sarapu is likewise entitled to

19  explain how USCIS fills gaps in or otherwise interprets the relevant statutes and regulations in

20  applying them.

21         Defendants' other examples are of the same ilk. Defendants object to Ms. Sarapu's

22  citation to case precedents in explaining (1) the requirement that a petitioner submit a

23  "comprehensive business plan," under 8 C.F.R. § 204.6(j)(4) and (2) the "Capital at Risk"

24  requirement. Yang Mot. No. 2 at 6. Again, Ms. Sarapu is not advocating for a particular legal

25  interpretation. The statements at issue simply describe the various case precedents that USCIS

26  relies upon in determining whether those requirements have been met. Such statements are not

27  impermissible "legal conclusions" about issues the jury must decide, but rather explanations of

28
    7
    Case No. 16-CR-00334-LHK
    ORDER DENYING DEFENDANT JENNIFER YANG'S MOTIONS IN LIMINE

how USCIS understands and thus applies the immigration laws.

Having rejected Defendants' specific objections, the Court approves of the Government's proposed testimony. Accordingly, Defendants' motion is DENIED. The Government has said, however, that Ms. Sarapu "will not opine as to the truth or falsity of any particular representation in the visa applications submitted by Defendants," ECF No. 193 at 3, and the Court will enforce that promise.

### C. Motion in Limine No. 4 to Exclude Evidence Regarding Ms. Yang's Personal Expenses and Bank Accounts

Defendant Yang's Motion in Limine No. 4 seeks to exclude evidence regarding Defendant Yang's personal expenses and bank accounts under Federal Rules of Evidence 402 and 403. ECF No. 171 at 2-4. The Government responds that evidence of Defendant Yang's personal expenses and bank accounts is admissible to show the fraudulent nature of Defendant Yang's scheme and that this evidence is not unfairly prejudicial. ECF No. 190 at 7-8.

Because this case concerns a scheme to defraud and money laundering, bank account records are relevant with regard to a defendant's knowledge of the fraudulent scheme. Courts routinely reject attempts to exclude bank records of defendants in fraud cases like this because "bank records [go] to one of the central issues in [a] prosecution for mail . . . fraud—the existence of a scheme to defraud." *See United States v. Blitz*, 151 F.3d 1002, 1007 (9th Cir. 1998). Additionally, the probative value of such records is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or wasting time and resources. *See id.* ("It would be an unusual case indeed where the financial records of a fraudulent enterprise . . . would be considered irrelevant in a prosecution for fraud. This is not that case. Furthermore, it is difficult to imagine how the probative value of the records could have been 'substantially outweighed by the danger of unfair prejudice.'" (quoting Fed. R. Evid. 403)).

Evidence of Defendant Yang's personal spending is also admissible. Evidence of Defendant Yang's personal spending could be relevant to show, among other things, whether Defendant Yang used investor funds on personal expenses. *United States v. Cohen*, 539 Fed.

Case No. 16-CR-00334-LHK
ORDER DENYING DEFENDANT JENNIFER YANG'S MOTIONS IN LIMINE

1 | App'x 743, 745 (9th Cir. 2013) (holding that the district court did not abuse its discretion by

2 | admitting evidence about defendant's lifestyle and spending "because a description of his lifestyle

3 | was probative of the manner in which [the defendant] conducted his scheme and relevant to

4 | whether the money he received was an investment, a loan, or funds he spent rather than funds he

5 | intended to repay."). "Thus, its probative value was significant." *United States v. DeMuro*, 677

6 | F.3d 550, 560 (3d Cir. 2012). In regards to whether this significant evidence should be excluded

7 | under Rule 403, the Ninth Circuit has noted that "even if . . . evidence result[s] in some prejudice

8 | (as all unfavorable evidence about a defendant does), it [is] not 'unfair prejudice'" and does not

9 | counsel in favor if exclusion when the evidence has a "high probative value." *Blitz*, 151 F.3d at

10 | 1009. The same conclusion follows as to Defendant Yang's arguments that evidence of her

11 | personal spending would confuse the issues or waste time.

12 |      Accordingly, the Court DENIES Defendant Yang's fourth motion in limine to exclude

13 | evidence regarding Defendant Yang's personal expenses and bank accounts.

14 | **III.**     **CONCLUSION**

15 |      For the foregoing reasons the Court DENIES Defendants' motions in limine.

16 | **IT IS SO ORDERED.**

17 |

18 | Dated: October 29, 2019

19 | *Lucy H. Koh*

20 | LUCY H. KOH
    United States District Judge

9

Case No. 16-CR-00334-LHK
ORDER DENYING DEFENDANT JENNIFER YANG'S MOTIONS IN LIMINE